NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1004

COMMONWEALTH

vs.

MORRIS I. CLEMONS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from an order of a District Court judge allowing the motion of the defendant, Morris I. Clemons, to suppress evidence seized during a police search of the defendant's Toyota Tacoma and from an order denying its motion for reconsideration.  The Commonwealth argues that, based on information the police learned during a traffic stop of the defendant's vehicle, including seeing a "corner-cut baggie" in it, they had probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement. Alternatively, the Commonwealth argues that because of the defendant's behavior, the police permissibly conducted a protective sweep of the vehicle for officer safety.  Because the

Commonwealth did not introduce police testimony explaining the significance of the corner-cut baggie or why the defendant's behavior justified a protective sweep, we cannot conclude that the judge erred in allowing the motion to suppress, and thus we affirm.

Background. From the evidence adduced at the suppression hearing at which Northbridge police Officer Jordan Tredeau testified, we set forth the facts found by the judge in his "sparse" findings in two margin endorsements, supplemented by additional facts "needed to provide context." Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015).

At about 9:32 P.M. on November 6, 2022, Officer Tredeau saw the Toyota stopped to the side of a roadway. The Toyota's brake lights were on, its transmission was in drive, and the defendant, who was its sole occupant, was slumped over and asleep with his foot on the brake pedal. When Officer Tredeau knocked on the window, the defendant awoke and took his foot off the brake, causing the Toyota to move forward slowly; Officer Tredeau told him to put the Toyota in park, and he complied. Asked for his license and registration, the defendant took a folder from the glove compartment and searched through it. The defendant then reached down with both hands between his legs; the judge found that he was "reaching for a bag on the floor." Because the defendant was showing signs of impairment, Officer

2

Tredeau ordered him out of the Toyota and administered field sobriety tests, which the defendant performed satisfactorily. Officer Tredeau did not form an opinion that the defendant was under the influence of any substance.

Sergeant Ryan Levesque arrived and saw on the floor of the Toyota a small, clear plastic bag that the judge found was a "corner-cut baggie." Officer Tredeau went to the Toyota and saw the corner-cut baggie. During a subsequent search of the Toyota, the police seized a canvas bag containing bags of an off-white powdery substance, a scale, and a handgun.[1] From the Toyota's center console, the police also seized items including cocaine and cash.

The judge initially denied the motion to suppress, ruling, "[b]ased on the totality of the circumstances including the [defendant] showing signs of impairment, [defendant] reaching for a bag on the floor and Sgt. Levesque clearly recognizing a corner cut baggie on the floor of the vehicle the search was

---

[1] Officer Tredeau testified that when he reached into the Toyota to look at the corner-cut baggie, he saw "in plain view" some of the contents of the canvas bag, which was nearby. However, the judge found that "[t]he [police] did not observe anything in the m[otor] vehicle in conjunction with the corner baggie that justified a search." In those circumstances, we do not consider any evidence of where the canvas bag was found in relation to the corner-cut baggie, because for us to do so would "detract from the judge's ultimate findings." Jones-Pannell, 472 Mass. at 431, quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).

3

lawful."  The defendant filed a motion to reconsider, calling

the judge's attention to Commonwealth v. Garcia, 34 Mass. App.

Ct. 645, 649-652 (1993).  On reconsideration, the judge allowed

the motion to suppress, ruling,

> "[m]otion for reconsideration allowed.  The [police] did
> not observe anything in the m[otor] vehicle in conjunction
> with the corner baggie that justified a search.  Corner
> baggie was a 'benign' object and did not give the officer
> probable cause to search the MV.  See Comm. v. Garcia, 34
> Mass. App. 645."

The Commonwealth filed a motion to reconsider, which the judge

denied.[2]  The Commonwealth filed a timely notice of appeal.

Discussion.  1.  Probable cause.  The Commonwealth argues

that the judge erred in ruling that the police did not have

probable cause to search the Toyota.

"Due to the inherent mobility of an automobile, and the

owner's reduced expectation of privacy when stopped on a public

road, police are permitted to search a vehicle based upon

probable cause to believe that it contains evidence of a crime."

Commonwealth v. Davis, 481 Mass. 210, 220 (2019).  "The

existence of probable cause depends on whether the facts and

circumstances within the officer's knowledge at the time of

---

[2] On the defendant's motion, the judge then dismissed the
complaint.  After the Commonwealth moved for reconsideration of
the dismissal pending this appeal, the judge reinstated the
complaint.  No issue is before us with respect to that ruling,
and so we do not consider it.

4

making the search or seizure were sufficient to warrant a prudent [person] in believing that the defendant had committed, or was committing, an offense" (citation omitted). Commonwealth v. Hernandez, 473 Mass. 379, 383 (2015). What is required is a showing that the police "entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime'" (citation omitted). Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992).

The Commonwealth argues that the judge's initial ruling was correct, and the police had probable cause to search the Toyota based on the defendant's signs of impairment, reaching for a bag on the floor, and police discovery of the corner-cut baggie. Conversely, the Commonwealth argues that the judge's ruling on reconsideration -- that the corner-cut baggie was a "benign object," and nothing the police "observed . . . in conjunction with" it gave them probable cause to search the Toyota -- was error. We are not persuaded.

The main problem with the Commonwealth's argument is that it did not introduce any police testimony explaining why the corner-cut baggie gave the police reason to believe that contraband would be found in the Toyota. In Garcia, 34 Mass. App. Ct. at 647, during a traffic stop, a State police trooper saw a transparent glassine baggie measuring one inch by one and

5

one-half inches, of a type that he recognized as often used for distribution of controlled substances.  This court held that the presence of the glassine baggie, which was "apparently empty," did not supply probable cause to search that vehicle because "[s]uch an item is 'capable of use for a lawful as well as an unlawful purpose.'"  Id. at 650, quoting Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 43 n.3 (1989).  In contrast, in Rivera, id. at 42, an experienced narcotics officer recognized a baggie that the defendant was holding as a type used to contain and carry smaller packets of cocaine, and when the defendant saw the police approaching, he immediately "plunged" the baggie inside the front of his pants.  This court held that the officer's testimony about the baggie's connection to drug distribution, coupled with the defendant's "evasive reaction," "readily cumulate[d] to provide probable cause."  Id. at 43.  Cf. Commonwealth v. Torres, 102 Mass. App. Ct. 359, 363-365 (2023) (probable cause to search vehicle based on trooper's seeing used "crack" pipe with "burnt Brillo on the end").

Here, in contrast to the cases just cited, the Commonwealth did not offer any police testimony that the corner-cut baggie in this case was typically used in packaging drugs.  On cross-examination, Officer Tredeau described the corner-cut baggie as a small, transparent plastic bag with one open end and an off-white residue inside.  The prosecutor did not ask Officer

6

Tredeau what his understanding was of the significance of the corner-cut baggie or the residue.[3]  It may be that the Commonwealth could have elicited testimony from Officer Tredeau or Sergeant Levesque that would have established that the corner-cut baggie was "primarily used for an illegal purpose." Torres, 102 Mass. App. Ct. at 363.  It did not do so.

Nor did the remaining facts found by the judge in his initial ruling -- that the defendant showed signs of impairment and reached for a bag on the floor -- require a finding of probable cause.  The defendant's apparent impairment could be attributed to his just having been awoken, particularly because he successfully completed field sobriety tests.  And the defendant's reaching for the bag on the floor could be attributed to his searching for his license and registration, particularly because the Commonwealth never elicited whether he found those papers in the folder.  The officers' subsequent discovery of the canvas bag and its contents could not be used to justify the search.  See Garcia, 34 Mass. App. Ct. at 651 n.8 ("a search is not to be made legal by what it turns up" [citation omitted]).

---

[3] Officer Tredeau did testify that, after he saw the corner-cut baggie and leaned into the Toyota, he saw the scale and recognized it as related to the sale of narcotics.  He was not asked if he had any similar understanding of the significance of the corner-cut baggie.

7

Absent any testimony about the significance of the corner-cut baggie, we discern no clear error or abuse of discretion in the judge's determination that the police did not have probable cause to search the Toyota.

2. Protective sweep of vehicle. Alternatively, the Commonwealth argues that even if seeing the corner-cut baggie did not give the police probable cause to search the Toyota, they permissibly conducted a protective sweep of it for officer safety. The defendant argues that the Commonwealth waived this argument by not raising it in the District Court. Assuming, without deciding, that the issue is properly before us, we conclude that it is not grounds for reversal.

The police may conduct a protective sweep of the interior of a motor vehicle for a weapon in circumstances in which they are "warranted in the belief that the[ir] safety . . . or that of other persons [is] in danger" (citation omitted). Commonwealth v. Manha, 479 Mass. 44, 49 (2018) (protective sweep of vehicle justified after driver pointed gun at another motorist on highway). The search must be "limited to areas from where the defendant could access a weapon." Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 744 (2018). However, a motorist's nervousness during a traffic stop is not ordinarily grounds for the police to believe that the motorist poses a danger to the police. See Commonwealth v. Sheridan, 470 Mass.

8

752, 758-759 (2015), quoting Commonwealth v. Cruz, 459 Mass. 459, 468 (2011) (it is "common" and "not necessarily indicative of criminality" for person "to appear nervous during even a mundane encounter with police"). See also Commonwealth v. Torres-Pagan, 484 Mass. 34, 39-40 (2020) (no reasonable suspicion that defendant was armed and dangerous because he got out of vehicle unprompted by police).

Officer Tredeau testified that, before he ordered the defendant out of the Toyota, he feared for his own safety because the defendant was reaching for something on the floor and appeared disoriented and nervous. Officer Tredeau did not testify that he looked inside the Toyota because he was concerned that the defendant was armed. Indeed, at the hearing on the defendant's motion to reconsider, when the judge asked the prosecutor, "[w]ere [police] looking for a loaded firearm or were they looking for drugs?" the prosecutor replied, "[n]o, they were looking for whatever. He's acting suspicious." Acknowledging that "it does not take much for a police officer to establish a reasonable basis to justify . . . [a] search based on safety concerns," Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999), we conclude that the evidence elicited from

Officer Tredeau was insufficient to establish a permissible basis for this search.

                              Order entered on May 14,
                                 2024, allowing motion to
                                 suppress, affirmed.

                              Order entered on June 28,
                                 2024, denying motion to
                                 reconsider, affirmed.

                              By the Court (Hand, Grant &
                                 Wood, JJ.[4]),

                              Clerk

Entered:   June 26, 2025.

---

[4] The panelists are listed in order of seniority.

10